UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00149-JHM

MARLON JERMAINE JOHNSON                                                                PLAINTIFF

V.

CHIEF DEPUTY BO THORPE, et al.                                                        DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 27-1]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Summary Judgment is GRANTED.

### I. BACKGROUND

Mr. Johnson, an inmate at the Grayson County Detention Center ("GCDC"), alleges that Defendants, Chief Deputy Thorpe and Captain Kyle Travis, placed him in administrative segregation in retaliation for making complaints against the jail in violation of the First Amendment. Mr. Johnson further alleges that he was placed in segregation without a hearing or administrative notice and that he lacked access to the procedures pertaining to the filing of grievances, both in violation of due process. In addition, he objects to certain conditions of his administrative segregation as it relates to recreation time and wearing tennis shoes. Mr. Johnson does not, however, dispute the incidents that led to his punishment.

Defendants filed for summary judgment on these claims. Regarding the retaliation claim, they argue that Mr. Johnson admitted to his role in the altercations that led to his segregation and has not shown a causal connection between any protected First Amendment conduct and the adverse action taken against him. [DN 27-1]. For the procedural due process claim, Defendants

argue that Mr. Johnson's placement in administrative segregation does not implicate a viable liberty interest under the Fourteenth Amendment and that Mr. Johnson failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, by not filing timely grievances following his punishment. Responding to Mr. Johnson's arguments that he lacked access to the procedures required to file grievances, Defendants show that Mr. Johnson signed the Jail Handbook—which provided the inmates with detailed procedures for filing grievances against the jail or its staff. [DN 27-3; 27-4]. Similarly, responding to Mr. Johnson's allegation that he was never properly notified of the disciplinary actions against him, Defendants show that he was issued a Notice of Administrative Charges, which notified him of the Disciplinary Board's hearing on the matter. [DN 27-7]. They also argue that Mr. Johnson's allegations are conclusory and not acceptable forms of evidence to show a genuine dispute of material fact.

This Court dismissed Mr. Johnson's other claims from his Complaint in its January 20, 2021 Order [DN 10].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. Discussion

The Court construes Mr. Johnson's § 1983 claims as "official-capacity" claims because his Complaint and subsequent pleadings made no indication that Defendants were being sued in their individual capacities. The Sixth Circuit has adopted the "course of proceedings" test to determine the capacity in which a defendant is being sued when the complaint is silent in that respect. *Moore v. City of Harriman*, 272 F.3d 769, 772–74 (6th Cir. 2001). Among the factors that the court considers is whether the defendants were named by their official titles, whether the plaintiff asks for compensatory or punitive damages against the defendants individually, and whether the allegations are worded in a way that would put defendants on individual notice. *Id.* Here, Mr. Johnson listed Defendants by their official title, repeatedly referring to Defendant Thorpe as "Chief Deputy Bo Thorpe" throughout his pleadings. The relief he asked for focused on changing numerous GCDC policies and procedures as it relates to the treatment of inmates, the termination of Defendants, and other equitable relief. Accordingly, the Court construes Plaintiff's claims as made against Defendants in their official capacities as government agents.

Because this is an official-capacity suit, it is treated as a suit against the municipality, Grayson County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that an "official-

capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### A. 42 U.S.C. § 1983 claims against Grayson County

Because this § 1983 claim is asserted against a municipality, Grayson County, the Court asks (1) whether Mr. Johnson's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable unless an action pursuant to an official municipal policy caused the constitutional violation). Liability cannot be imposed upon a municipality on the basis of *respondeat superior*. *Monell*, 436 U.S. at 691.

### i. First Amendment retaliation claim

To make a successful *Monell* claim against Grayson County, Mr. Johnson must first show that a constitutional violation occurred. *Collins*, 503 U.S. at 120. For his First Amendment retaliation claim, Mr. Johnson must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing such conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Evans v. Vinson*, 427 Fed. App'x. 437, 445 (6th Cir. 2011).

Mr. Johnson has not shown sufficient evidence that he engaged in protected First Amendment conduct, or that the disciplinary actions taken against him were connected to any such protected conduct. To support his claim that he engaged in protected conduct, Mr. Johnson only cites to his own statement made in a disciplinary appeal on July 18, 2019. [DN 41-2]. He was appealing his placement in segregation following an incident at his cell on July 12, 2019, where

he made a threat to jail staff. In the appeal, he states: "I do happen to know that this is a retaliatory act, made by [Defendants] as a result of me relaying my issues to the US Marshal." [*Id.*]. Further, Mr. Johnson stated in his Response that documents "prove and show" that the "possible motivation for Plaintiff's sanctions was the previous complaints Plaintiff had filed [against the jail]." [DN 41 at 4]. The only such documents provided are prior grievances that Mr. Johnson had filed against the jail, such as his complaint about being deprived of vegan diet options. [See DN 41-7; 41-8]. These grievances, by themselves, do not show any causal connection between protected conduct and the adverse action taken against him. Mr. Johnson offers no evidence that suggests these previous complaints drove the Defendants' motives for placing him in segregation following incidents in July and August. Because Mr. Johnson was given ample time by the Court to conduct discovery and still has not offered specific evidence to support his bare allegations of retaliation, he has not shown a genuine dispute of material fact.

   *ii.* *Fourteenth Amendment procedural due process claim*

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property absent due process of law. U.S. Const. amend. XIV, § 1. Those who seek to invoke its procedural protection must establish that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court found in *Sandin v. Conner* there was no liberty interest protecting against an assignment to segregated confinement (which is more punitive than administrative segregation) because such a punishment did not "present a dramatic departure from the basic conditions" of the inmate's sentence. 515 U.S. 472, 485 (1995). The Court added that disciplinary segregation did not give rise to the type of "atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*

5

Mr. Johnson's placement in 60 days of administrative segregation does not implicate a liberty interest because it does not constitute an "atypical" deprivation in the ordinary incidents of prison life under the Due Process Clause or state law. Plaintiff could reasonably expect being placed in segregation for violating GCDC rules, pursuant to the jail's disciplinary policy. Accordingly, Mr. Johnson's Fourteenth Amendment due process claim fails.

Even if there was a protected liberty interest at stake, Mr. Johnson failed to adequately exhaust his administrative remedies before bringing this action, as required by statute. The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants demonstrate that Plaintiff failed to exhaust the remedies available to him at the GCDC by not objecting to his punishment in a timely fashion, pursuant to the prison's policy. For example, after the alleged incidents on August 11, August 17, and August 30, respectively—where Mr. Johnson admits that he threatened a trustee passing trays to the cells and physically assaulted other inmates in his cell and at the law library—he never submitted any timely grievances. [DN 27-1 at 9]. He submitted no grievances from August 4, 2019 through September 15, 2019. *Id.* His grievance dated September 15, 2019 did not address any of the above incidents. *Id.*

Mr. Johnson responds by claiming that the proper procedures for filing grievances for alleged mistreatment of inmates were never made available to him, constituting a lack of due process. In addition, he explains that he "was intimidated by Defendant Thorpe's authority" and the "power that Defendant Thorpe possessed was recognizable." [DN 41 at 8]. However, Mr. Johnson signed the GCDC Jail Handbook, which outlines the grievance policy in sufficient detail

and lists the step-by-step procedures for filing grievances. *See* DN 27-3; 27-4. Moreover, Mr. Johnson had filed numerous grievances against the jail in the past, demonstrating knowledge of how to do so. Regarding his claim of intimidation, Mr. Johnson has offered no evidence to that end; conclusory allegations that he was afraid of Mr. Thorpe's authority cannot suffice.

Mr. Johnson further alleges that he was not given proper notice of the disciplinary action taken against him following the July 12, 2019 incident, and did not receive a hearing. But the record shows that he was given a Notice of Administrative Charges the day of the incident and refused to sign it. [DN 27-7]. This operated to give Mr. Johnson notice of the Disciplinary Board's hearing on the matter, which led to the sanctions being issued against him.

Mr. Johnson's allegations are conclusory in nature and not backed up by specific facts which could reasonably support a jury's finding in his favor. Because he has not shown adequate evidence of constitutional deprivations under *Monell*, his § 1983 claim against Grayson County must fail.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 27-1] is GRANTED.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

November 18, 2021

cc: Counsel of Record